UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Heartland, Inc.,  File No. 23-cv-150 (ECT/ECW)

    Plaintiff and Counter-
    Defendant,

v.  **OPINION AND ORDER**

Povolny Specialties, Inc., and Design
Electric, Inc.,

    Defendants and Counter-
    Claimants.

---

Lee B. Bennin and Loren L. Hansen, Lathrop GPM LLP, Minneapolis, MN, for Plaintiff and Counter-Defendant Heartland, Inc.

Justice Ericson Lindell, Greenstein Sellers PLLC, Minneapolis, MN, for Defendant and Counter-Claimant Povolny Specialties, Inc.

Rachel Zimmerman Scobie, Merchant & Gould P.C., Minneapolis, MN, and James Warren Beard, Merchant & Gould P.C., Denver, CO, for Defendant and Counter-Claimant Design Electric, Inc.

---

In this patent-infringement case, Defendants Povolny Specialties and Design Electric seek pre-discovery summary judgment. The at-issue patents concern commercial lighting control technology. Defendants' basic contention is that the accused lighting control panels—which were manufactured by Povolny and installed by Design Electric—cannot infringe because they do not contain essential claim limitations of the asserted patents, including a "soft start circuit device" or "soft start circuitry coupled with solid state lighting devices within a soft start LED light bank." Plaintiff Heartland opposes the

motion. It argues that a reasonable juror could find infringement and that, regardless, it should have the chance to obtain discovery before the summary-judgment motions are decided. Defendants' motions will be granted. The evidence Heartland identifies would not justify a finding of infringement, and Heartland has not shown how the requested discovery (much of which is already available to Heartland) would justify a verdict in its favor.

I[1]

Heartland, a Minnesota-based corporation, is the assignee of two patents related to commercial lighting control technology—U.S. Patent Nos. 9,788,391 B1 and 10,390,400 B1. Compl. [ECF No. 1] ¶¶ 2, 26, 32; Ex. A (the "'391 Patent") [ECF No. 1-1]; Ex. B (the "'400 Patent") [ECF No. 1-2]. The named inventor on both patents is Blake Redfield; at times relevant to this case, Mr. Redfield served as Traffic Control Manager for the city of St. Cloud, Minnesota. See '391 Patent at 1; '400 Patent at 1; ECF No. 45 ¶ 4. Mr. Redfield assigned his patent applications to Heartland on May 2, 2016. See ECF No. 21 ¶ 3, Exs. D, E.[2]

---

[1] Unless otherwise noted, the facts are undisputed or described in a light most favorable to Heartland. Fed. R. Civ. P. 56(a).

[2] Design Electric raises a question regarding the assignment's validity, but not as a ground for summary judgment. See ECF No. 19 at 5 & n.1; see also ECF No. 9 ¶ 48 (asserting Heartland lacks standing to enforce the patents because Mr. Redfield lacked authority to assign rights to the patents). Similarly, though Povolny Specialties challenges the patents' inventorship, it does not raise this as a ground for summary judgment. See ECF No. 8 at 6, ¶ 5.

Povolny is a Minnesota-based electrical and metal fabricator that, among other business activities, manufactures cabinets containing control panels for commercial street lighting. Compl. ¶¶ 3, 17; ECF No. 8 ¶ 3; ECF No. 27 ¶ 6, Ex. D. [ECF No. 27-1 at 38–40]. Design Electric is a Minnesota-based electrical contractor that, among other activities, installs lighting control panels manufactured by Povolny. Compl. ¶¶ 4, 17; ECF No. 9 ¶ 4; ECF No. 27 ¶ 7, Ex. E [ECF No. 27-2 at 1–5].

The '391 Patent, entitled "Solid State Lighting Panel," issued October 10, 2017. The '391 Patent claims priority to provisional application no. 62/387,967, filed January 11, 2016, and provisional application no. 62/386,494, filed December 3, 2015. '391 Patent at 1. The '391 Patent is generally directed to industrial and commercial lighting panels capable of "sequentially energizing a plurality of LED lighting panels . . . and ramping up luminous intensity within each panel or group of co-powered panels." '391 Patent 1:15–23. As the '391 Patent describes, the invention seeks primarily to prevent sudden spikes of "inrush current" when lighting panels are energized simultaneously—as such spikes are "harmful not only to the panel but also to the upstream power line source and the downstream lighting devices as well." *Id*. 1:25–33. The '391 Patent defines "inrush current" as "a momentary current surge in [the] electrical device occurring when the power control device is first activated," or the "maximum, instantaneous input current drawn by an electrical device when [it is] first turned on." *Id*. 1:34–37. The '391 Patent has one independent claim, which states:

> 1. In combination, a *solid state lighting panel and a plurality of soft start LED light banks*, comprising:
>     an incoming AC line power connection;

> a plurality of solid state lighting devices within said plurality of soft start LED light banks;
>
> *soft start circuitry* coupled with and configured to gradually increase the luminous intensity of at least one of said plurality of solid state lighting devices upon an initiation;
>
> a plurality of electrical relay devices electrically coupled to said incoming AC line power connection, individual ones of said plurality of electrical relay devices operative to selectively couple and uncouple said incoming AC line power line connection to respective individual ones of said plurality of solid state lighting devices; and
>
> a programmable logic circuit in electrical communication with said plurality of electrical relay devices and configured to sequentially energize said individual ones of said plurality of electrical relay devices and thereby selectively couple said incoming AC line power line connection to respective individual ones of said plurality of solid state lighting devices in synchronization with a zero crossing point of the sinusoidal input line voltage, to thereby initiate said at least one of said plurality of solid state lighting devices.

'391 Patent 7:38–62 (emphasis added).

The '400 Patent, entitled "Soft Start Circuitry for LED Lighting Devices with Simultaneous Dimming Capability," issued August 20, 2019. The '400 Patent claims priority to provisional application No. 62/386,494, filed December 3, 2015. '400 Patent at 1. The '400 Patent is generally directed to "soft start Light Emitting Diode (LED) lighting, and more particularly to retrofitting existing commercially available circuitry to provide enhanced soft start circuitry amenable to energizing LED based lighting devices." '400 Patent 1:17–21, 3:33–37. The '400 Patent has three independent claims, though the

Complaint identifies only Claim 1 specifically. *See* Compl. ¶ 33 ("Defendants' . . . Infringing Control Panels . . . infringe at least claim 1 of the '400 Patent."). Claim 1 states:

> 1. A *soft start circuit device* configured to soft start light emitting diode (LED) devices, comprising:
>> a capsule having a wall separating an interior from an exterior thereof and providing electrical insulation and physical consolidation and isolation to said capsule interior;
>> a first wire and a second wire each passing from said capsule exterior through said capsule wall into said capsule interior;
>> a capacitor retained in said capsule interior having a first terminal electrically coupled to said first wire and a second electrical terminal electrically coupled to said second wire;
>> at least one indicium affixed with said first wire indicative of a 0-10 volt DC dimmer negative polarity connection; and
>> at least one indicium affixed with said second wire having indicative of a 0-10 volt DC dimmer positive polarity connection;
>> said first wire configured to directly electrically connect to a negative polarity electrical junction between an output of a 0-10 volt DC LED dimmer and a dimmer input of an LED driver;
>> said second wire configured to directly electrically connect to a positive polarity electrical junction between said output of said 0-10 volt DC LED dimmer and said dimmer input of said LED driver.

'400 Patent 10:39–65 (emphasis added).

Before the asserted patents issued, Heartland, Povolny, and Design Electric collaborated on a project to retrofit St. Cloud's streetlights to include LED lighting. Mr. Redfield drafted the project requirements for the City. ECF No. 20 ¶ 3. These included a requirement that the updated lighting include soft start circuitry, and the city ultimately

5

required that the bid winner use control panels manufactured by Povolny and soft start circuitry devices manufactured by Heartland. *Id*. ¶¶ 3, 4. Design Electric bid for the project, and its bid was accepted. *Id*.

The control panels' development deserves description. In about January 2016, Mr. Redfield and an unidentified city electrician contacted Povolny seeking its fabrication expertise with respect to lighting panel enclosures to be used in the retrofit. ECF No. 8[3] at 7 ¶¶ 4–5. Povolny worked with Mr. Redfield to develop the prototype lighting cabinet and its enclosed back panel assembly, and it claims to have "made contributions to the invention ultimately embodied in the [p]roject prototypes," which were called the SC-100 (100 amps) and SC-150 (150 amps). *Id*. at 8 ¶ 8. Povolny then developed an "SC-200" prototype "using the identical technology for a 200-amp cabinet and panel." *Id*. None of these prototypes included LED lights or other lighting devices—rather, "the cabinets were designed to energize multiple lighting devices, such as LED lights or any other type of light fixture or device, that could be connected to the cabinets." *Id*. at 8 ¶ 9. The SC-100, SC-150, and SC-200 lighting cabinet designs were adopted as St. Cloud's specification for outdoor lighting cabinets. *Id*. at 8 ¶ 12. The "SC" series designation indicates that the cabinets and control panels were manufactured for St. Cloud. ECF No. 45 ¶ 10.

---

[3]   ECF Nos. 8 and 9, cited herein, are the verified answers and counterclaims filed by Povolny and Design Electric, respectively. A verified complaint, signed and dated as true under penalty of perjury, is the equivalent of an affidavit for summary judgment purposes, and "the facts alleged in a verified complaint need not be repeated in [an] affidavit" at summary judgment. *Presson v. Reed*, 65 F.4th 357, 361 n.2 (8th Cir. 2023); *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001).

By April 2016, Design Electric began purchasing Povolny's control panels to use with LED light fixtures containing Heartland's soft start circuitry devices. *Id.* ¶ 11; ECF No. 20 ¶ 4. In May 2016, Povolny received a purchase order from Design Electric for twenty-five SC-100 lighting cabinets, ten SC-150 lighting cabinets, and two SC-200 lighting cabinets. ECF No. 8 at 8–9 ¶ 13. Povolny supplied these thirty-seven lighting cabinets to Design Electric. *Id*. In 2016 and 2017, Design Electric installed Povolny's control panels and Heartland's soft start circuit devices (which were "installed in LED light fixtures") in St. Cloud. ECF No. 20 ¶ 5. Design Electric paid a "licensure" fee "for service panels" to Heartland on the products it purchased through February 2017. ECF No. 26 ¶ 10; ECF No. 20 ¶ 7 & Ex. B [ECF No. 20-2].

James Rau, Heartland's Vice President of Marketing, was involved in "commissioning" the control panels that Design Electric installed for the city—that is, he configured the panels' programmable logic controllers to enable soft start functionality. ECF No. 26 ¶ 11. In 2018, Mr. Rau was commissioning control panels when he discovered additional control panels in the city that had been manufactured by Povolny and installed by Design Electric that were not part of the original retrofit project. *Id*. ¶ 12. Mr. Rau "examined the control panels and realized that they appeared identical to the Heartland control panel design." *Id*. Mr. Rau also "observed that the streetlights powered by these control panels ha[d] soft start functionality." *Id*. ¶ 13. Mr. Rau was able to "inspect the control panels," but he did not have access to the lighting fixtures that were powered to these control panels in order "to inspect the soft start circuitry device." *Id*. Mr. Rau discovered eleven new control panel installations for which Design Electric had not paid

7

royalties, though he believes there are more "due to the control panels' functionality and economic efficiency." *Id*. ¶ 14.[4]

Between October 2021 and April 2022, Heartland sent a series of letters and emails to Povolny, and one to Design Electric, informing them of Heartland's belief that Povolny had infringed Heartland's patents. ECF No. 27 Exs. H–K. Neither Defendant responded substantively to Heartland's correspondence. *See id.* ¶ 18. On January 10, 2022, Povolny sent a letter to St. Cloud's engineering staff explaining that Povolny had been notified of Heartland's infringement claims and that Povolny would be "ceasing production of all City of Saint Cloud Lighting Cabinets [because] a conflict of interest is present regarding the creation of these patents and the authority responsible for the specifications in the manufacturing of them." ECF No. 27 Ex. L [ECF No. 27-3 at 89–90].

In this case, Heartland alleges that the "control panels" that were not part of St. Cloud's LED-retrofit project were "based on Heartland's design" and "incorporated the technology described and claimed in" the asserted patents. Compl. ¶ 17. Heartland claims that Defendants' activities—*i.e.*, Povolny's manufacturing of these panels and Design Electric's installation of them—infringe "at least claim 1" of each of the '391 and the '400 Patents. *Id.* ¶¶ 25–36. To be clear, the lighting control panels are the only accused products in this case. *See id.* ¶ 19 (alleging that "at least as early as March 21, 2018, [Povolny]

---

[4] Mr. Rau also says that on May 12, 2019, he "received an order from Karen's Electric in Richmond, Minnesota[,] for 60 soft start devices" that "cannot be used without a control panel equipped with soft start functionality." *Id*. ¶ 15. According to Mr. Rau, "someone must have created the control panels that Karen's Electric used with the soft start devices." *Id*.

8

began building and Design Electric began installing control panels which incorporated the technology described and claimed in the [asserted patents] without paying Heartland royalties (the 'Infringing Control Panels')"); *see also id.* ¶ 9 ("This action concerns technology used in industrial and commercial lighting control panels.").

II

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). "Summary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." *Id.*

To find infringement, "the accused device must contain 'each limitation of the claim, either literally or by an equivalent.'" *TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008) (citation omitted); *see also Donlen Abrasives, Inc. v. Full Circle Int'l, Inc.*, 667 F. Supp. 2d 1046, 1052 (D. Minn. 2009). Heartland's claims fail as a matter of law because there is no genuine dispute that the accused control panels do not include the requisite "soft start circuitry" or "plurality of soft start LED light banks" limitations of the '391 Patent claims, or the "soft start circuit device" limitation of the '400 Patent claims.

Start with the '391 Patent. Claim 1 of the '391 Patent recites "a solid state lighting panel and a *plurality of soft start LED light banks*, comprising," among other elements, "*soft start circuitry* coupled with and configured to gradually increase the luminous intensity of at least one of said plurality of solid state lighting devices upon initiation." '391 Patent 7:38–46 (emphasis added).

Defendants argue that the accused control panels cannot infringe the '391 Patent because they do not include the essential claim limitation of "soft start circuitry," required by Claim 1, much less a combination of a "plurality of soft start LED light banks" coupled with "soft start circuitry." *See* ECF No. 19 at 18–21; ECF No. 33 at 7–8. Specifically, in its Verified Answer and Counterclaim, Povolny attests that "[n]one of the Accused Cabinets supplied by [it] included any LED lights or other lighting devices," and that "[n]one of the Accused Cabinets supplied by [it] included any soft start circuit devices or any other form of soft start circuitry." ECF No. 8 at 12 ¶¶ 29–32. Povolny's wiring diagrams for the accused cabinets also do not reveal LED lights, other lighting devices, or

10

soft start circuitry, as required by the claims. *Id*. at 12 ¶ 31, Ex. P [ECF No. 8-1 at 34–36]. Design Electric, too, attests that "[s]oft start circuitry is not installed inside any [Povolny] lighting control panel that has ever been installed by Design Electric," and that "[t]he claims of the '391 [P]atent cannot be satisfied by the Povolny lighting control panel alone" because the '391 Patent also requires "LED light fixtures that have soft start circuitry." *See* ECF No. 9 at 9 ¶¶ 12–14. Design Electric maintains that "the last time [it] installed a light fixture having soft start circuitry" was September 22, 2017, the month before the '391 Patent issued. *Id.* at 9 ¶ 16. And since the '391 Patent issued on October 10, 2017, Design Electric has not "installed any Povolny lighting panels in combination with any light fixture having soft start circuitry." *Id.* at 9–10 ¶¶ 17–18. Design Electric further attests that "all . . . installations" of light fixtures with soft start circuitry in 2016 and 2017 "took place prior to the issuance of the '391 [P]atent," and "[a]ll soft start circuitry installed in light fixtures by Design Electric" prior to the '391 Patent's issuance "was purchased by Design Electric from Heartland." *Id*. at 10 ¶¶ 19–20. The "soft start circuitry installed in light fixtures by Design Electric in 2016 and 2017 was used only in light fixtures for the City of St. Cloud." *Id*. at 10 ¶ 21. And in 2018, the City of St. Cloud "stopped requesting the inclusion of soft start circuitry in its projects." ECF No. 20 ¶ 8.

Heartland fails to refute Defendants' assertions with any evidence from which a reasonable juror could conclude that either Povolny or Design Electric infringed the '391 Patent. Heartland cannot (and does not) dispute that Claim 1 of the '391 Patent requires a combination of a lighting control panel and LED light fixtures with soft start circuitry. *See* '391 Patent 7:38–62; ECF No. 15 ¶ 13 (answering that "the '391 Patent is a document that

11

speaks for itself"). Heartland admits that soft start devices "cannot be used without a control panel equipped with soft start functionality." *See* ECF No. 26 ¶ 15. And Heartland does not dispute Defendants' assertions that the accused control panels themselves do not contain "soft start circuitry" or a combination of a "plurality of soft start LED light banks" coupled with "soft start circuitry." ECF No. 15 ¶¶ 11–21; ECF No. 16 ¶¶ 29–32. Despite its pre-suit investigation, Heartland says that it is "without sufficient information to confirm or deny" Defendants' attestations that the accused control panels do not include these limitations. ECF No. 16 ¶¶ 29–32; *see also* ECF No. 15 ¶¶ 12–21. Having reviewed the wiring diagrams for the accused control panels, *see* ECF No. 15 ¶ 31, Ex. P [ECF No. 8-1 at 34–36], Heartland still offers no evidence to support the existence of soft start circuitry in the panels. And Heartland's argument that claim construction is required for the term "soft start circuitry"—the only term for which they say construction is necessary—does not change things, as Heartland's infringement argument does not depend on any particular construction of that term.

Heartland argues that the entry of summary judgment would be premature because it needs discovery of additional facts, and it has filed a Rule 56(d) declaration to support its opposition to Defendants' motions. ECF No. 44 ¶¶ 15–20.[5] This is not persuasive.

---

[5]     Specifically, Heartland asserts that it needs to conduct discovery from Design Electric on the following topics: (1) the specifications for the lighting projects under which Design Electric performed work for the City since at least March 2018; (2) Design Electric's performance of lighting projects for the City since at least March 2018; (3) the current configuration of the City's streetlight systems, including the drivers installed in those streetlights and the cause of the streetlights' ability to soft start; (4) Design Electric's continued involvement or lack thereof in lighting projects for the City; and (5) all of the above for the other municipalities in which Design Electric works on streetlighting. ECF

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)–(3). To warrant additional discovery under Rule 56(d), a non-movant "must show: (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018) (citation and internal quotations omitted). Rule 56(d) cannot be used to pursue a mere hope that something may turn up. *Id.*

Heartland's Rule 56(d) discovery requests are directed either to information to which it already has access or to information that will not help it oppose summary judgment. Some information that Heartland seeks is publicly available. The City of St. Cloud's project specifications are publicly available on the internet as part of the City's bidding process. *See* City of St. Cloud Bid Results,

---

No. 25 at 20; ECF No. 27 ¶ 15. Heartland contends that the following discovery is needed from Povolny Specialties: (1) expert and inventor testimony; (2) relevant industry publications and other industry-related documents; (3) Defendants' knowledge of the asserted patents; (4) the City's specifications for the lighting projects under which Povolny admits that it made control panels since at least March 2018; (5) the current configuration of the City's streetlight systems, including the drivers installed in those streetlights and the cause of the streetlights' ability to soft start; (6) Povolny's continued involvement or lack thereof in manufacturing control panels for the City; (7) Povolny's knowledge of soft start circuitry and functionality for the City's streetlights; and (8) all of the above for the other municipalities in which Povolny has provided control panels for use with LED streetlighting. ECF No. 43 at 21–22; ECF No. 44 ¶ 15.

13

https://qcpi.questcdn.com/cdn/results/?group=7707&provider=7707 (last visited October 31, 2023); *see also* ECF No. 40 ¶¶ 2–3, Ex. F [ECF No. 40-1]. Discovery related to the invention itself is also available to Heartland. Mr. Rau programmed the control panels for Heartland between at least 2016 and 2018. Mr. Rau acknowledges that he and Mr. Redfield, the named inventor on both asserted patents, worked together to develop the lighting control panels for St. Cloud. *See* ECF No. 45. Heartland fails to explain how the other discovery that it seeks, such as expert testimony, Defendants' knowledge of the patents and streetlight functionality, streetlight-driver configurations, or discovery related to other municipalities, could rebut Defendants' evidence that the accused control panels simply do not include a plurality of LED light banks with soft start circuitry as required by the '391 Patent claims.

The infringement claims as to the '400 Patent fare no better. Heartland fails to provide any substantive response to Defendants' motions regarding Heartland's failure to establish that the accused control panels meet the "soft start circuit device" claim limitation of the '400 Patent. Heartland did not oppose this argument in briefing and offered no meaningful explanation for its failure to respond at oral argument, and thus has waived any such argument. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Looking to the merits, each of the independent claims of the '400 Patent requires a "soft start circuit device" that is not present in the accused control panels. *See* '400 Patent 10:39–65 (claiming "[a] *soft start circuit device* configured to soft start light emitting diode (LED) devices"); 11:40–12:13 (claiming "[i]n combination, a 0-10 volt DC

dimmer, an LED driver, and a *soft start circuit device*"); 12:39–13:4 (claiming "[i]n combination, a 0-10 volt DC dimmer, an LED driver, and *a soft start circuit device*") (emphases added). Heartland's Complaint describes the '400 Patent as claiming "soft start circuit devices with components that improves [sic] prior technology specific to LED lighting devices." Compl. ¶ 14. There is no genuine dispute that the accused control panels do not have such soft start circuit devices, and that any soft start circuit devices Design Electric did install were installed in light fixtures, and prior to the issuance of the '400 Patent. ECF No. 9 at 12 ¶ 38. Finally, as discussed above, Heartland's Rule 56(d) discovery request does not change the outcome where the requested discovery is either available to Heartland or will not help it oppose summary judgment.

As for Povolny's remaining state-law counterclaim for tortious interference with prospective economic advantage, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when, as here, all federal claims are dismissed well before trial. *See Hervey v. Cnty. of Koochiching*, 527

15

F.3d 711, 726–27 (8th Cir. 2008). There is no reason to deviate from this general rule here, where the case remains in its earliest stages and all that remains is a state-law claim.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Design Electric, Inc.'s Motion for Summary Judgment [ECF No. 17] is **GRANTED**;

2. Defendant Povolny Specialties, Inc.'s Motion for Summary Judgment [ECF No. 31] is **GRANTED**;

3. Count III of Povolny Specialties, Inc.'s Verified Answer and Counterclaim [ECF No. 8] is **DISMISSED WITHOUT PREJUDICE**; and

4. Plaintiff Heartland, Inc.'s Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: October 31, 2023

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court